[No. 26401. Department One. January 5, 1937.]

WILLIAM HEIAN et al., Respondents, v. GEORGE FISCHER et al., Appellants.[1]

Edgar C. Snyder, for appellants.

Rummens & Griffin, for respondents.

MAIN, J.—This action was brought to recover damages for breach of a contract. The defendants denied liability and, by cross-complaint, sought recovery of damages for what they claimed to be fraud. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the

[1] Reported in 63 P. (2) 518.

plaintiffs had a right to recover. From a judgment entered in favor of the plaintiffs in the sum of nine hundred dollars, the defendants appeal.

There is but one question presented upon this appeal, and that is a question of law. The facts will only be stated in so far as it may be necessary to present this question.

The appellants, George Fischer and Emma Fischer, his wife, were the owners of a certificate of purchase which was the result of the foreclosure of a mortgage upon real property in the city of Seattle. Sometime after they acquired the certificate, and probably about three months afterwards, they desired to sell it. To accomplish this purpose, the matter was turned over to one Oloff Larsen to find a purchaser.

In the course of a few days, rather by accident, Larsen contacted the plaintiff William Heian, with whom he had not been acquainted before, and in the course of a conversation it developed that Heian was in the real estate business. Then Larsen told him of the certificate of purchase owned by the appellants, which he was authorized to sell. Heian became interested, and afterwards suggested the matter to his partner, A. W. Richey. Later, Joseph Wieser, who had previously had transactions with either one or both of the respondents, in the way of purchasing real estate, became interested in the property which was covered by the certificate of purchase, looked it over, and finally agreed to purchase the certificate for twenty-two hundred dollars.

When the appellants turned the matter over to Larsen, they only desired him to secure for the certificate thirteen hundred dollars cash, net to them. As a result, on August 15, 1934, Wieser deposited with the Puget Sound Title Insurance Company securities to the amount of twenty-two hundred dollars. In the

escrow direction that accompanied the securities, the title company was to prepare title insurance, and the thirteen hundred dollars was to be paid to the appellants when "a proper assignment of said certificate of purchase executed by the legal holder thereof and running to and in favor of the undersigned" is executed. Subsequently, and on August 17, 1934, the respondents delivered to the title insurance company a statement wherein it was said that there would be delivered

" . . . to you subsequent to this date the said certificate of purchase by the holder thereof, together with an assignment in blank, to be delivered to the undersigned, or order, upon the payment of $1300 net, which delivery is to be made giving the undersigned authority to insert the name of the assignee in the assignment of said certificate of purchase."

This declaration was signed by the respondents, William Heian and A. W. Richey.

August 20, 1934, the appellants, George Fischer and wife, deposited the certificate of purchase with the title insurance company, accompanied by a declaration to the effect that:

"You are hereby authorized and instructed to deliver said certificate of purchase, together with the said assignment thereof, to Messrs. Wm. Heian and A. W. Richey, or order, as and when they have deposited, or have caused to be deposited for the account of the undersigned, the sum of $1300, said sum is to be net to the undersigned with no deductions."

There is the further statement that authority is given to William Heian and A. W. Richey, the respondents, "to insert the name of the assignee in the assignment above referred to."

Several days elapsed before the title insurance could be prepared. In the meantime, Wieser, the purchaser, investigated and found out who owned the certificate.

He then went to see the appellants, and, as a result thereof, and on August 24, 1934, the appellants notified the title insurance company that ''we now and hereby demand that you forthwith return to our undersigned attorney, for us,'' the certificate and the assignment thereof. This demand was signed by the appellants, and in accordance therewith the certificate was returned to them. About three days later, Wieser withdrew from the title insurance company his securities and his escrow declaration. Thereafter, the present action was begun.

There is no question as to the amount of damages allowed by the trial court, if the respondents were entitled to recover.

It is contended that the appellants were justified in breaching their contract of sale and withdrawing their papers from the title insurance company, because the respondents had misrepresented to Wieser, when he made the purchase, their relations to the appellants and what the appellants were to receive for the certificate, together with other kindred matters. There is no claim that the respondents were guilty of any fraudulent representations made to the appellants or made to Wieser with reference to the value of the property the certificate for which he was purchasing. While they were waiting for the title insurance to be prepared, as above stated, Wieser located the owners of the certificate and called to see them. As to why he looked them up, he testified as follows:

''Q. (The Court) When did you first attempt to find the Fischers? Was it after you had put up your bonds and your cash? A. Yes, about a week after I had signed up. Q. Why were you interested in finding out who the owner was? A. I just wanted to know who owned it. Q. Why? A. I felt I was in a trap somehow, and I thought I would find the owner and find out what we could do about it. Q. What do you mean by

a trap, that you made a bad deal? A. Yes. Q. And you wanted to get out of the deal? A. I was very anxious to get out of it."

Upon this question, one of the appellants testified:

"Q. You said you would have been willing to sell for thirteen hundred dollars to anybody else, would you? A. Yes. Q. What was your only reason then for not going through with it with Mr. Wieser on that basis? A. Because I thought he was cheated, and we would like to help him out. Q. (Mr. Rummens) You did not believe you were cheated? A. No. But I wanted to help him out and do the right thing."

From what is said, it is apparent that the question is whether the appellants were justified in breaching their contract when no fraud had been practiced upon them, because they thought that Wieser had not been rightly treated and they wanted to help him out. It is apparent that Wieser, who is an experienced dealer in real estate, did not attempt to breach his own contract, but induced the appellants to do so, in order that he might become released from a transaction which he had concluded was not a good deal, even though no fraud had been practiced upon him in any respect. The law is that an action for damages for fraud can only be brought by the one to whom the fraudulent representations were made. 27 C. J. p. 4; *Markworth v. State Savings Bank of Woden,* 212 Iowa 954, 237 N. W. 471; *Caffall v. Bandera Tel. Co.,* 136 S. W. (Tex. Civ. App.), 105.

The appellants would not have had any right to bring an action for fraud against the respondents, and, not having any right to bring such an action, it necessarily follows that they would not have any right to breach their contract because they conceived that there may have been fraud practiced upon Wieser. We have assumed, in disposing of this case, without so deciding, that the representations which they claim the respond-

64

ents made, though they deny it, were, in fact, made, and that they would constitute fraud as against Wieser.

The judgment will be affirmed.

MILLARD, C. J., STEINERT, GERAGHTY, and BLAKE, JJ., concur.