[No. 39642-1-I.   Division One.   January 12, 1998.]

FEDERAL FINANCIAL COMPANY, *Appellant*, v. DONALD S. GERARD, ET AL., *Respondents*.

*John R. Crickman*, for appellant.

*Charles R. Lonergan, Jr.*, of *Siderius, Lonergan & Crowley*, for respondents.

Cox, J. — May the assignee of a promissory note formerly held by the Federal Deposit Insurance Corporation (FDIC) as a receiver use the extended statute of limitations of federal law when suing on the note? We hold that under Washington law, the assignment of the note carries with it the right to use the extended statute of limitations provided by federal law. Accordingly, we reverse the trial court's summary dismissal of the action and remand for further proceedings.

Donald S. Gerard executed a promissory note dated March 21, 1989, in the face amount of $22,725 in favor of Emerald City Bank. The note matured by its terms on June 21, 1989. Gerard failed to pay the obligation when due.

On July 2, 1993, the Washington state supervisor of banking closed Emerald City Bank for the purpose of liquidation. On that same date, the supervisor appointed the FDIC the receiver of the failed bank. In November 1994, the FDIC assigned for value the Gerard note to Federal Financial Company (FFC), the current holder.

On August 8, 1995, FFC commenced this action against Gerard to recover the obligation evidenced by the note. Gerard asserted as an affirmative defense Washington's six-year statute of limitations on written instruments, citing RCW 4.16.040(1). For purposes of our analysis and because the parties do not dispute the point, we assume the parties intended to refer to RCW 62A.3-118. That is the statute of limitations applicable to negotiable instruments. Both RCW 4.16.040(1) and RCW 62A.3-118 have terms of six years. Thus, both state statutes would have run in June 1995, six years from the date of maturity of the Gerard note.

FFC moved for summary judgment. It took the position that its action on the Gerard note was governed by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA)[1] limitations period, 12 U.S.C. § 1821(d)(14). Gerard opposed the motion and sought dismissal of the action on the basis of the Washington statute of limitations. The court denied FFC's summary judgment motion and granted Gerard's motion to dismiss.

FFC appeals.

## I. STATUTE OF LIMITATIONS

FFC contends that the court erred by concluding that 12 U.S.C. § 1821(d)(14) does not apply to assignees of the

---

[1]Pub. L. No. 101-73, 103 Stat. 183 (1989).

FDIC. It first argues that extending the FIRREA limitations period to assignees of the FDIC is in accord with the common law of assignments. Secondly, according to FFC, such an extension supports the underlying policy of FIRREA. It argues that this latter approach is in accord with the decisions of the vast majority of state and federal courts that have considered the question. We agree that application of the federal statute is consistent with the Washington law of assignment of notes. We need not address the other arguments and decline to do so.

In reviewing an order granting summary judgment, we engage in the same inquiry as the trial court.[2] CR 56(c) permits a trial court to grant summary judgment if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Neither party identified below an issue of material fact for purposes of this motion. Thus, the trial court decided the issue as one purely of law.

The trial court considered the substantial case authority presented by both sides. It appears from our review of the record that Gerard moved to dismiss the action in response to FFC's motion for summary judgment.[3] By dismissing the action, the court appears to have treated the matter as one of cross-motions for summary judgment.

The starting point of our analysis is the federal statute on which FFC relies. FIRREA states, in relevant part, that:

(14) Statute of limitations for actions brought by [FDIC when acting as] conservator or receiver

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to *any action brought by the Corporation [i.e., the FDIC] as conservator or receiver* shall be—

(i) in the case of any contract claim, the *longer* of—

---

[2]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[3]Clerk's Papers at 77.

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law . . . .[4]

FIRREA does not differ from the Washington limitations period in length—both are six years. Rather, the difference is in when the claim accrues.

Under Washington law, the claim accrues when the note matures. Here, that date is June 21, 1989. Thus, the Washington statute of limitations expired on June 21, 1995. This was six years after the maturity of the Gerard note and prior to this action.

In contrast, under FIRREA, the limitations period accrues on the *later* of:

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.[5]

The FDIC was appointed receiver for the failed bank on July 2, 1993. Thus, the FIRREA limitations period will not run until July 2, 1999, six years after the FDIC was appointed as receiver of the failed bank.

FIRREA is silent on the question of the applicability of its limitations period to assignees of the FDIC. By its express terms, the statute speaks only to its applicability to the "[FDIC] as conservator or receiver."[6] The threshold issue is whether we should apply federal or state law to determine if the FIRREA limitations period applies here, when FIRREA makes no express reference to assignees of a note formerly held by the FDIC. The recent case of *O'Melveny & Myers v. F.D.I.C.*[7] supplies an answer to this question.

---

[4]12 U.S.C. 1821(d)(14)(A) (emphasis added).

[5]12 U.S.C. 1821(d)(14)(B).

[6]12 U.S.C. 1821(d)(14)(A).

[7]512 U.S. 79, 114 S. Ct. 2048, 129 L. Ed. 2d 67 (1994).

There, the FDIC, as receiver, sued the law firm of O'Melveny & Myers, former counsel to a failed savings and loan association in California. The action was based on allegations that the firm had committed malpractice and breached its fiduciary duties in connection with public offerings for two real estate syndications. The firm raised defenses under California law that the knowledge of the savings and loan officers was imputed to the savings and loan and, thus, the FDIC. According to the firm, the FDIC was estopped from bringing the action because it stood in the shoes of the failed savings and loan.

The FDIC argued that FIRREA requires the promulgation of federal common law for this and other issues because of the high federal interest in the area of regulating financial institutions.[8] A unanimous United States Supreme Court disagreed.

The Court first noted that cases requiring federal common-law rules of decision are " 'few and restricted.' "[9] It further noted that such cases are "limited to situations where there is a 'significant conflict between some federal policy or interest and the use of state law.' "[10] The Court held that the desire for uniformity of law throughout the nation on the questions before it, the possible depletion of the deposit insurance fund, or disservice to the federal program of insurance were insufficient reasons for the court to create a federal rule of decision in that case. According to the Court, the proper law to decide the questions raised by the defenses was the law of California.

Here, we consider a different section of FIRREA, the same statute that was at issue in *O'Melveny*. The section of FIRREA that is before us is silent on the question of what effect, if any, the statute has on assignees of a note formerly held by the FDIC. Should federal law supply the answer to this question?

---

[8] *O'Melveny & Myers*, 512 U.S. at 86.

[9] *Id.* at 87 (citation omitted).

[10] *Id.*

We hold that state law, not federal law, should decide the question. The *O'Melveny* Court rejected substantially similar arguments to those that FFC advances here. There, the Court said that FIRREA does not require promulgation of federal common law because of the high federal interest in the area of regulating financial institutions.[11] Here, FFC essentially argues that the choice of the federal statute of limitations would promote the underlying purposes of FIR-REA by promoting free marketability from the FDIC of notes formerly held by failed financial institutions. While such a choice might promote the underlying purposes of FIRREA, we think this argument is indistinguishable from that rejected in *O'Melveny*. In short, promotion of a purpose of FIRREA does not alone justify the choice of federal law to decide the question of what statute of limitations should apply in this case. Rather, state law applies.

Having determined that Washington law applies, we must decide what specific law controls. Gerard argues that applying Washington law necessarily means that FFC's action is subject to the state limitations period. FFC argues that the common law of assignments requires the application of the federal limitations period. We agree with FFC's conclusion, but we reach it by a different route than that argued by FFC.

A note is a negotiable instrument under the Uniform Commercial Code.[12] Accordingly, we look to the Code to determine the rights of an assignee of a note. Those rights are defined in RCW 62A.3-203(b), which provides as follows:

> *Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument,* including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in

---

[11]*O'Melveny & Myers*, 512 U.S. at 86.

[12]RCW 62A.3-104.

due course if the transferee engaged in fraud or illegality affecting the instrument.[13]

According to the official comments to this provision, its apparent purpose is to promote a free market for instruments. There is one stated exception to that policy, where "fraud or illegality affecting the instrument" is involved. This exception does not apply to the facts of this case.

■ We conclude that the unambiguous language of the above statutory provision supports the conclusion that the assignment of a note by the FDIC carries with it the right to enforce the instrument. This includes the right to use the extended statute of limitations, 12 U.S.C. § 1821(d)(14). Our conclusion is most consistent with both the unambiguous wording of the statute and the policy of the Code that promotes a free market for negotiable instruments.[14]

■ Our conclusion is also consistent with Washington's common law respecting assignability of contract rights. Generally, such rights may be freely assigned unless forbidden by statute or rendered ineffective for public policy reasons.[15] An assignee of a contract "steps into the shoes of the assignor, and has all of the rights of the assignor."[16] And the assigned rights include not only those identified in the contract, but also applicable statutory rights.[17]

Gerard argues, alternatively, that the statute of limitations contained in FIRREA is "personal" to the FDIC, and cannot be assigned. In making this argument, Gerard relies

[13](Emphasis added.)

[14]See JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, § 14-1 through § 14-10 (2d ed. 1980).

[15]International Commercial Collectors, Inc. v. Mazel Co., 48 Wn. App. 712, 716-17, 740 P.2d 363 (1987) (citing RESTATEMENT (SECOND) OF CONTRACTS § 317 (1979)).

[16]Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wn.2d 490, 495, 844 P.2d 403 (1993).

[17]Puget Sound Nat'l Bank v. Department of Revenue, 123 Wn.2d 284, 292-93, 868 P.2d 127 (1994).

on the language of the federal statute, which states that the extended limitations period applies to the FDIC when acting in its capacity as conservator or receiver. Gerard argues that because the FDIC cannot assign its "status" as conservator or receiver, it cannot assign the extended limitations period that applies to it when acting in those capacities. We disagree.

Washington case law recognizes the existence of rights that are personal to the assignor and incapable of assignment.[18] But no Washington case explicitly defines the nature of a right that is personal and, hence, not assignable. The Supreme Court of Texas, in addressing the applicability of the FIRREA limitations period to assignees of the FDIC, stated that, "although relating to the property assigned, [personal rights] constitute accrued causes of action that *may be asserted independently of ownership of the property*."[19] That court concluded that the extended limitations period under FIRREA is not a personal right, because it "confers no benefit independent of the asset to which it relates."[20] We agree and apply the same rationale to this case.

In urging us to find that the FIRREA limitations period is a right personal to the FDIC, Gerard relies heavily on

---

[18]*Hesselgrave v. Mott*, 23 Wn.2d 270, 280, 160 P.2d 521 (1945) (contract to support another person cannot be assigned without consent of that person); *Gillam v. City of Centralia*, 14 Wn.2d 523, 530, 128 P.2d 661 (1942) (right to damages for injury to property is personal to owner and will not pass with deed unless expressly conveyed), *overruled on other grounds by Ackerman v. Port of Seattle*, 55 Wn.2d 400, 329 P.2d 210 (1958); *Heian v. Fischer*, 189 Wash. 59, 63, 63 P.2d 518 (1937) (action for damages for fraud can be brought only by party to whom fraudulent representations made).

[19]*Jackson v. Thweatt*, 883 S.W.2d 171, 176 (Tex. 1994) (emphasis added) (citing *Breidecker ex rel. Cohn v. General Chem. Co.*, 47 F.2d 52 (7th Cir. 1931) (conveyance of land not an assignment of grantor's action for damages for damages previously sustained for trespass upon that land) and *Huston v. Ohio & Colo. Smelting & Ref. Co.*, 63 Colo. 152, 165 P. 251 (1917) (assignee of stock did not receive assignor's action for fraud in connection with the stock's purchase)).

[20]*Thweatt*, 883 S.W.2d at 176. *See also Bruin Holdings, Inc. v. Moderski*, 960 F. Supp. 62, 67 (M.D. Pa. 1996) (same).

*WAMCO, III, Ltd. v. First Piedmont Mortg. Corp.*[21] *WAMCO* held that the FIRREA limitations period is a right personal to the FDIC that arises solely from its status as conservator or receiver and is therefore not assignable.[22] In reaching its conclusion, that federal court relied on its interpretation of Virginia state law. In dismissing FFC's action, the trial court here also relied on *WAMCO*, considering it the "most closely and persuasively reasoned decision on this issue."

Gerard's reliance upon the *WAMCO* decision is misplaced. Both the Virginia Supreme Court and the Fourth Circuit, the circuit in which the *WAMCO* federal district court sits, have rejected that ruling. It has no continuing vitality.

In *Union Recovery Ltd. Partnership v. Horton*,[23] the Virginia Supreme Court disagreed with *WAMCO*'s holding that the FIRREA limitations period is a "personal," and nonassignable, right. Instead, relying on the Virginia common law of assignments, the court concluded that the FIRREA limitations period applied to assignees of the FDIC.[24]

In *Federal Fin. Co. v. Hall*,[25] the Fourth Circuit also rejected *WAMCO*. The court concluded that, because FIRREA was silent on the question presented, state law should supply the rule of decision. Accordingly, the Fourth Circuit applied the rule announced by the Virginia Supreme Court in *Horton*.[26]

Because we hold that Washington law governs the question of assignments, we also look to that law to determine whether characterizing the right to use the extended stat-

---

[21]856 F. Supp. 1076 (E.D. Va. 1994).

[22]*WAMCO*, 856 F. Supp. at 1086 (quoting 6A C.J.S. *Assignments* § 76 (1975)).

[23]252 Va. 418, 477 S.E.2d 521 (1996), *cert. denied*, 520 U.S. 1167 (1997).

[24]*Horton*, 252 Va. at 423 (stating that "[i]t is well established law in Virginia that an assignee obtains his rights from the assignor, and . . . 'stand[s]' in the shoes' of the assignor when pursuing an action on the contract or instrument assigned") (citing *National Bank & Trust Co. v. Castle*, 196 Va. 686, 692-93, 85 S.E.2d 228, 232 (1955)).

[25]108 F.3d 46 (4th Cir.), *cert. denied*, 522 U.S. 858 (1997).

[26]252 Va. 418.

ute of limitations as "personal" creates some exception. We do not find it persuasive to characterize the right as personal and decline to adopt *WAMCO*. Because the FDIC's ability to seek a remedy within the FIRREA limitations period is integrally tied to its possession of the instrument, it is among the "rights, remedies and benefits which are incidental to the thing assigned" and not only a right "personal to the assignor and for [its] benefit only."[27]

Gerard makes two additional arguments. First, he claims that RCW 62A.3-203(b) does not confer on FFC the right to use the federal extended statute of limitations because RCW 62A.3-305(a)(2) controls here. Second, Gerard argues that our holding implicitly and erroneously characterizes FFC as a holder in due course. Neither contention is correct.

RCW 62A.3-305(a) states in relevant part:

(a) Except as stated in subsection (b),[28] the right to enforce the obligation of a party to pay an instrument is subject to the following:

. . .

(2) A defense of the obligor stated in another section of this Article or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract[.]

Gerard argues that he may use this section to assert the defense of the six-year statute of limitations contained in RCW 62A.3-118(a)—i.e., "another section of this Article"—against FFC in this action. Alternatively, Gerard argues that he could assert the defense of the six-year statute of limitations contained in RCW 4.16.040(1)—i.e., "a defense . . . that would be available . . . under a simple contract." Accordingly, Gerard argues that, under RCW 62A.3-203(b),

---

[27]*WAMCO*, 856 F. Supp. at 1086 (italics and citations omitted).

[28]Subsection (b) states that: "The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder."

he may assert defenses against FFC that he could not assert against the FDIC.

In addressing this argument, we must determine whether these two statutory provisions—RCW 62A.3-305(a)(2) and RCW 62A.3-203(b)—are in conflict and, if so, whether they can be harmonized. In interpreting various provisions of an act, we consider its separate sections in relation to each other and to the whole, harmonizing any conflicts to the extent possible.[29] Moreover, we will not construe a statute in such a way that it is in derogation of the common law "unless the Legislature has clearly expressed its intention" to do so.[30]

On its face, RCW 62A.3-203 does not conflict with RCW 62A.3-305(a)(2). The former section clearly states that a transferee may enforce an instrument to the same extent as the transferor. Nothing in that section suggests that the right to enforce excludes the right to an extended limitations period that would have applied had the assignor sought to enforce the obligation. But this special situation, which arises with an assignment from the FDIC, does not either rob § 62A.3-305(a)(2) of meaning or generally eliminate the defenses outlined in that section. Rather, the effect of § 62A.3-203 is that an assignee will not be subject to certain defenses generally available under § 62A.3-305(a)(2) if its assignor was not subject to them.

Likewise, this interpretation of § 62A.3-203 is not in derogation of the common law of assignments. As we stated above, under our common law, an assignee stands in the shoes of the assignor. We now consider in more detail the question of the scope and types of rights that pass with assignment.

In *Puget Sound Nat'l Bank*,[31] our Supreme Court considered this question. After stating the general principle that assignment carries with it both those rights identified

[29]*Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982).

[30]*Price v. Kitsap Transit*, 125 Wn.2d 456, 463, 886 P.2d 556 (1994).

[31]123 Wn.2d at 292.

in the contract and applicable statutory rights and citing a number of cases illustrating that rule, the court stated:

> These cases support the conclusion that an assignment carries with it the rights and liabilities as identified in the assigned contract, but also all applicable statutory rights and liabilities. To hold otherwise would be contrary to the rule that the assignee acquires whatever rights the assignor possessed prior to the assignment.[32]

Accordingly, the court concluded that the assignment of installment sales contracts carried with it the right to a sales tax refund to which the assignor would have been statutorily entitled.[33] The court went on to state the policy reasons for its holding:

> This rule is critical because whether a commercial paper transaction involves a borrowing or purchase, the lender or buyer must have confidence that the law is clear as to the rights and liabilities involved. *Uncertainty as to the attributes of assignment, as would be created under the dissent's analysis, would inhibit certain routine commercial lending transactions and increase costs to borrowers and sellers of commercial paper until settled by future litigation.*[34]

Our courts have consistently held that an assignee's rights are coextensive with those of the assignor at the time of assignment. Accordingly, where a bankruptcy trustee assigned its cause of action under a fidelity bond, the assignee was entitled to bring a direct claim against the bond-issuing insurance company.[35] In another case, this court found that the assignee of an insured's malpractice claim against an insurance broker was entitled to sue for negligence in spite of the fact that the assignor later

---

[32]*Puget Sound Nat'l Bank*, 123 Wn.2d at 292-93.

[33]*Id.* at 293.

[34]*Id.* at 293 (emphasis added).

[35]*Estate of Jordan*, 120 Wn.2d at 495.

entered into a covenant not to sue with insurer.[36] The court emphasized that the assignee receives all of the assignor's rights as of the time of assignment; subsequent actions by the assignor do not affect those rights. Regarding the availability of defenses, this court has also stated that the assignee takes the assignment subject to any defenses that could have been asserted against the assignor.[37]

Our holding here is completely consistent with these well-established common-law principles. First, FFC, as the FDIC's assignee, may enforce the note according to the statute of limitations that was applicable to the FDIC. Second, as to defenses, since the state limitations period was not a defense that was available against the FDIC, it is likewise not available against its assignee—FFC.

Because we have considered and rejected the argument that RCW 62A.3-305(a)(2) requires that FFC be bound by the State statute of limitations, we need not consider whether § 305(b) applies. We likewise have no need to decide whether FFC is a holder in due course.

Gerard has failed to demonstrate why the unambiguous wording of the provision in the Uniform Commercial Code should not be given effect here. He has likewise failed to call to our attention either a statute or public policy reason why FFC should not be entitled to the extended statute of limitations of 12 U.S.C. § 1821(d)(14). The public policy of encouraging assignability of notes dictates the opposite result. We therefore conclude that our reading of the applicable Washington law is correct and supports our conclusion that FFC is entitled to the extended statute of limitations of the federal law.

We emphasize that our holding is based on Washington law. But we also note that almost every federal court that has considered this question has concluded that the FIR-

[36]*Steinmetz v. Hall-Conway-Jackson, Inc.*, 49 Wn. App. 223, 227, 741 P.2d 1054 (1987), *review denied*, 110 Wn.2d 1006 (1988).

[37]*Pacific N.W. Life Ins. Co. v. Turnbull*, 51 Wn. App. 692, 700, 754 P.2d 1262, *review denied*, 111 Wn.2d 1014 (1988).

REA limitations period applies to assignees of the FDIC.[38] Most state courts have come to the same conclusion.[39] In reaching this conclusion, both state and federal courts have relied on (a) the common law of assignments that the assignee "stands in the shoes" of the assignor;[40] and (b) policy considerations underlying FIRREA regarding the importance of insuring the broadest possible market for the assets of failed banks.[41] As we have stated earlier in this opinion, we need not reach the latter policy ground on which decisions of other courts have been based. Our decision rests on the U.C.C. and the law of assignments in Washington.[42]

At oral argument, Gerard contended that because the FDIC endorsed the Gerard note in its corporate capacity, rather than as receiver, the FIRREA limitations period did not apply. Thus, according to Gerard, the FDIC had no extended limitations period to assign to FFC. We reject this argument.

▪ Gerard failed to preserve the issue for review. He did not advance the argument below or in its brief on ap-

---

[38]*See, e.g., Hall,* 108 F.3d 46; *Cadle Co. v. 1007 Joint Venture,* 82 F.3d 102 (5th Cir. 1996); *United States v. Thornburg,* 82 F.3d 886 (9th Cir. 1996); *FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir. 1993); *Bruin Holdings,* 960 F. Supp. 62; *National Enters. v. Moore,* 948 F. Supp. 567 (E.D. Va. 1996); *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.,* 943 F. Supp. 962 (N.D. Ill. 1996); *Remington Invs. v. Kadenacy,* 930 F. Supp. 446 (C.D. Cal. 1996).

[39]*See, e.g., Professional Collection Consultants v. Hanada,* 53 Cal. App. 4th 1016, 62 Cal. Rptr. 2d 182 (1997); *Horton,* 252 Va. 418; *Twenty First Century Recovery, Ltd. v. Mase,* 279 Ill. App. 3d 660, 665 N.E.2d 573 (1996); *SMS Fin. L.L.C. v. Ragland,* 918 P.2d 400 (Okla. Ct. App. 1995), *cert. denied,* 519 U.S. 872 (1996); *N.S.Q. Assocs. v. Beychok,* 659 So. 2d 729 (La. 1995); *Thweatt,* 883 S.W.2d 171.

[40]*See, e.g., Bledsoe,* 989 F.2d at 810 (citing RESTATEMENT (SECOND) OF CONTRACTS § 336 (1979)). *But see O'Melveny & Myers,* 512 U.S. at 85 (criticizing courts' application of "federal common law" to fill in statutory gaps) and *Hall,* 108 F.3d at 49-50 (questioning the continued vitality of the "federal common law" based reasoning of the *Bledsoe* line of cases, in light of *O'Melveny & Myers*).

[41]*See, e.g., Bledsoe,* 989 F.2d at 811 (applying shorter state limitations period to assignee of the FDIC would frustrate FIRREA's "policy of allowing the FDIC to rid the federal system of failed bank assets").

[42]*Cf. Moore,* 948 F. Supp. 567 (reaching same result based on Virginia version of U.C.C. and that state's law of assignments).

peal. Accordingly, we ordinarily would not need to consider it.[43]

However, in the interest of judicial economy, we believe it is proper to address the question.[44] Even if Gerard had preserved the issue for review, the argument fails.

No party contested the fact in the summary judgment proceeding that the FDIC acquired the Gerard note in its capacity as receiver. But, more importantly, the provisions of FIRREA specifically make the extended limitations period applicable to the FDIC when acting in its corporate capacity.[45]

Finally, Gerard provided supplemental authority to us after the hearing.[46] That supplemental authority, RCW 4.08.080 and RCW 62A.3-305, does nothing to alter our analysis or conclusions.

The trial court erred in summarily dismissing the complaint. Accordingly, we reverse that part of its order.

## II. ATTORNEY FEES

Gerard requests attorney fees based on the provision for fees in the note and RCW 4.84.330. FFC does not request fees on appeal. Because Gerard is not the prevailing party on appeal and final judgment has not been rendered in favor of either party, we deny the request. The trial court, on remand, will determine who prevails in the final judgment.

We reverse the summary dismissal of the action and remand for further proceedings.

---

[43]RAP 2.5(a).

[44]RAP 18.8(a) (authority of this court to waive or alter rules of appellate procedure "in order to serve the ends of justice").

[45]12 U.S.C. § 1823(d)(3)(A) states that: "With respect to any asset acquired or liability assumed pursuant to this section, *the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title.*" (Emphasis added.)

[46]RAP 10.8.

186

KENNEDY, A.C.J., and BECKER, J., concur.

After modification, further reconsideration denied May 1, 1998.

Review denied at 136 Wn.2d 1025 (1998).