# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JOHN R. WILSON, a married man, and JACQUELINE M. WILSON, a married woman, | ) ) ) ) | No. 74705-3-I |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| QUALITY LOAN SERVICE CORP., OF WASHINGTON, a Washington corporation, MCCARTHY and HOLTHUS, LLP, a California limited partnership, | ) ) ) ) ) ) | UNPUBLISHED OPINION<br><br>FILED: April 17, 2017 |
| Respondents. | ) ) | |

VERELLEN, C.J. — John and Jacqueline Wilson appeal the summary judgment

dismissal of their lawsuit against Quality Loan Service Corp. of Washington (Quality)

and McCarthy & Holthus. Because the Wilsons identify no genuine issue of material

fact, we affirm.

## FACTS

In 2005, the Wilsons executed a promissory note in the amount of $567,000 in

favor of Washington Mutual Bank (WaMu). The note was secured by a deed of trust

encumbering the Wilsons' residential property. The deed of trust identified WaMu as

the lender and Talon Group as the trustee.

In 2008, the Federal Deposit Insurance Corporation (FDIC) placed WaMu in receivership and transferred many of WaMu's assets, including all of its loans and loan commitments, to JPMorgan Chase Bank N.A. (Chase). The Wilsons made payments to Chase until sometime in 2010, when they defaulted on the loan.

On May 11, 2011, Chase submitted a foreclosure transmittal package to Quality, instructing Quality to foreclose on the Wilsons' property. The foreclosure transmittal package identified Chase as the holder of the Wilsons' note and provided electronic copies of the note and deed of trust for Quality to review.

On October 1, 2012, Quality was appointed as the successor trustee for the purpose of foreclosing on the Wilsons' property. The appointment provides

> JOHN R. WILSON AND JACQUELINE M. WILSON, HUSBAND AND WIFE is/are the grantor(s), TALON GROUP, A CALIFORNIA CORPORATION is the trustee and WASHINGTON MUTUAL BANK, A WASHINGTON CORPORATION is the beneficiary under that certain deed of trust dated April 22, 2005 and recorded on May 2, 2005 . . . .
>
> The present beneficiary under said deed of trust appoints QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation, whose address is 19735 10TH AVENUE NE SUITE N-200 POULSBO, WA 98370, as successor trustee under the deed of trust with all powers of the original trustee.[1]

The appointment was signed by a vice president of Chase. The appointment was recorded on October 10, 2012.

On October 16, 2012, Quality sent the Wilsons a notice of default. The notice provides that Chase is "the current owner of the Note secured by the Deed of Trust."[2]

---

[1] Clerk's Papers (CP) at 344.

[2] CP at 347.

2

On November 19, 2012, Chase executed a beneficiary declaration stating that it was the holder of the Wilsons' note. The declaration states, "JPMorgan Chase Bank, National Association, is the holder of the promissory note or other obligation evidencing the above-referenced loan."[3] Quality received the declaration on November 30, 2012.

On December 11, 2012, Quality recorded a notice of trustee's sale. The notice lists Quality's physical address as "Quality Loan Service Corp. of Washington, 19735 10th Avenue NE, Suite N-200, Poulsbo, WA 98370."[4] The notice also informed the Wilsons that Chase was the owner of the note. Quality postponed the sale multiple times, and no sale has occurred.

The Wilsons filed a lawsuit against Quality and its legal counsel, McCarthy & Holthus, seeking declaratory relief and to enjoin the foreclosure based on alleged violations of the Deeds of Trust Act (DTA), chapter 61.24 RCW, and the Consumer Protection Act (CPA), chapter 19.86 RCW. The superior court granted summary judgment dismissal of the Wilsons' complaint. The Wilsons appeal.

## DECISION

This court reviews summary judgments de novo.[5] A defendant can move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case.[6] The burden then shifts to the plaintiff to set forth specific facts showing

---

[3] CP at 339. The declaration lists the address of the Wilsons' property securing the deed of trust.

[4] CP at 357.

[5] Michael v. Mosguera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

[6] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

a genuine issue of material fact for trial.[7] While we construe all evidence and reasonable inferences in the light most favorable to the nonmoving party, if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is proper.[8] The plaintiff may not rely on mere speculation or unsupported assertions, facts not contained in the record, or inadmissible hearsay.[9]

The Wilsons argue that the trial court erred in dismissing their claims for relief based on the DTA. But, as the Wilsons acknowledged below, the DTA does not create an independent cause of action for monetary damages when, as here, no trustee's sale has occurred.[10]

However, a plaintiff may bring a CPA claim based on alleged DTA violations, even without a completed sale.[11] Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[12] To prevail on a CPA claim, a plaintiff must prove (1) the defendant engaged in an unfair or deceptive act or practice, (2) that the act occurred in trade or commerce, (3) that the act affects the public interest, (4) that the plaintiff suffered injury

---

[7] Id. at 226.

[8] Id. at 225 (quoting Celotex, 477 U.S. at 322).

[9] Higgins v. Stafford, 123 Wn.2d 160, 169, 866 P.2d 31 (1994) (quoting Peterick v. Explosives Corp. of America, 22 Wn. App. 163, 181, 589 P.2d 250 (1977)).

[10] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 417, 334 P.3d 529 (2014).

[11] Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 784, 336 P.3d 1142 (2014) (quoting id.).

[12] RCW 19.86.020.

to his business or property, and (5) the injury was causally related to the act.[13] The failure to establish even one of these elements is fatal to the claim.[14]

First, the Wilsons argue that Chase lacked authority to appoint Quality as a successor trustee because Chase was not the holder of the note. Thus, the Wilsons contend, Quality committed an unfair or deceptive practice by attempting to foreclose on the property without authority to do so.

Under the Washington DTA, the term "beneficiary" is defined as the "holder of the instrument or document evidencing the obligations secured by the deed of trust."[15] The holder of an instrument, such as a promissory note, is the "person entitled to enforce" the terms of the note.[16] Only a lawful beneficiary has the power to appoint a successor to the original trustee named in the deed of trust.[17] Only a properly appointed trustee may proceed with a nonjudicial foreclosure of real property.[18] Thus, if an unlawful beneficiary appoints a successor trustee, that trustee lacks legal authority to carry out the foreclosure.[19]

Here, the record establishes that Chase was the holder of the Wilsons' note. The record contains a declaration signed by an officer of the FDIC that states Chase

---

[13] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[14] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

[15] RCW 61.24.005(2).

[16] RCW 62A.3-301; RCW 62A.3-104(e).

[17] Bavand v. OneWest Bank, F.S.B., 176 Wn. App. 475, 486, 309 P.3d 636 (2013).

[18] Id. at 486-87.

[19] Walker v. Quality Loan Service Corp., 176 Wn. App. 294, 306, 308 P.3d 716 (2013).

acquired "all loans and all loan commitments" of WaMu on September 25, 2008.[20] The record also contains a copy of a purchase and assumption agreement showing that the FDIC transferred all of WaMu's loans and loan commitments to Chase on that date.[21] "Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument."[22] Because Chase was entitled to enforce the terms of the note, Chase had the authority to appoint Quality as the successor trustee, and Quality was thus entitled to foreclose on the Wilsons' property.

The Wilsons allege that Chase was not the holder of the note because WaMu likely sold the note to a securitized trust prior to the date its assets were transferred to Chase. This claim rests primarily on the Wilsons' unsupported assertions and beliefs about WaMu's business practices. However, the Wilsons also point to an inconsistency between two declarations submitted by Quality in support of its motion for summary judgment. Quality submitted a declaration of Sierra Herbert-West, a Quality employee, dated October 6, 2015, in which she stated:

> Quality has processed non-judicial foreclosures of loans that have been securitized for many years. Its employees are generally aware that the documents reflecting the securitization and servicing of a securitized loan are available on the SEC website. Quality employees, including myself, accessed and reviewed various securitization documents, *including trusts established by WaMu such as the trust into which Wilson's loan was deposited.*[23]

---

[20] CP at 443.

[21] CP at 397.

[22] Federal Financial Co. v. Gerard, 90 Wn. App. 169, 176-77, 949 P.2d 412 (1998) (emphasis omitted) (quoting RCW 62A.3–203(b)).

[23] CP at 192 (emphasis added).

6

It appears that Herbert-West's declaration was erroneous, and Quality subsequently submitted a second declaration, dated October 8, 2015, in which she stated:

> Quality has processed non-judicial foreclosures of loans that have been securitized for many years. Its employees are generally aware that the documents reflecting the securitization and servicing of a securitized loan are available on the SEC website. Quality employees, including myself, accessed and reviewed various securitization documents, *including the FDIC Purchase and Assumption Agreement which transferred all of the assets of WaMu to Chase on September 25, 2008.*[24]

It is not clear whether the trial court considered the earlier declaration. But even if it did, it does not establish a genuine issue of material fact because Herbert-West did not state that WaMu sold or otherwise transferred the Wilsons' note before it was assumed by Chase.

The Wilsons next contend Quality violated its duty of good faith under RCW 61.24.010(4) and its duty to comply with RCW 61.24.030(7)(a) by relying on Chase's beneficiary declaration without conducting an independent inquiry into the identity of the holder.[25] "A foreclosure trustee must 'adequately inform' itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a 'cursory investigation' to adhere to its duty of good faith."[26]

---

[24] CP at 220 (emphasis added).

[25] RCW 61.24.010(4) provides that the "trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.030(7)(a) requires that, "for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection."

[26] Lyons, 181 Wn.2d at 787 (quoting Walker, 176 Wn. App. at 309-10).

But a trustee "can rely on a declaration consistent with its duty of good faith if the declaration unambiguously states the beneficiary is the actual holder."[27] Here, Chase's beneficiary declaration unambiguously states that it is the holder of the Wilsons' note. Moreover, the foreclosure transmittal package received by Quality identified Chase as the holder. The Wilsons fail to raise a genuine dispute of material fact as to whether Quality violated its statutory obligations.[28]

The Wilsons next argue that Quality violated RCW 61.24.030(6) by failing to consistently maintain a physical address in Washington.[29] In support of this claim, the Wilsons provided declarations from individuals who attempted to visit Quality at its Seattle office in February and March 2014 and had difficulty doing so because the office was in a locked building with a call box and there was no phone number listed to reach the office.[30] In response, Quality provided another declaration from Herbert-West, stating that Quality moved its Washington office from Poulsbo to Seattle on January 2, 2014. Herbert-West stated that the Seattle office was open and accessible to the public

---

[27] Brown v. Wash. State Dep't of Commerce, 184 Wn.2d 509, 544, 359 P.3d 771 (2015).

[28] The Wilsons argue that Quality did not receive Chase's beneficiary declaration until November 30, 2012, approximately six weeks after Quality sent the Wilsons a notice of default. But RCW 61.24.030(7)(a) requires only that a trustee have proof of the beneficiary prior to recording a notice of trustee's sale.

[29] RCW 61.24.030(6) requires that "prior to the date of the notice of trustee's sale and continuing thereafter through the date of the trustee's sale, the trustee must maintain a street address in this state where personal service of process may be made, and the trustee must maintain a physical presence and have telephone service at such address."

[30] Many of these declarations were filed in an unrelated lawsuit brought against Quality by the Attorney General's Office, alleging that Quality failed to maintain a physical address in Washington in February 2014, after it vacated its Poulsbo office but before the Seattle office was accessible to the public.

at all times after that date, though it was inadvertently left off of the call box until February 26, 2014.

However, even assuming that there were periods of time when Quality failed to maintain a physical location in Washington accessible to the public, in order to establish a violation of the CPA, the Wilsons must demonstrate that they suffered an injury due to Quality's alleged unfair or deceptive act. Here, nothing in the record suggests that the Wilsons attempted to contact Quality in early 2014 at the Seattle office and were unable to do so. John Wilson stated in a declaration only that "[o]n a weekday in the early summer of 2013, I drove to the [Quality] Poulsbo, Washington office and [Quality] staff were not present and so no contact could be made."[31] And Wilson stated in both his deposition and in interrogatories that he refused to contact Quality at all because he believed they would not help him. The Wilsons do not establish a genuine issue of material fact as to the injury element of a CPA claim.

The Wilsons next assert that Quality violated its duty of good faith by failing to act impartially towards them. Specifically, the Wilsons assert Quality shared office space and employees with its legal counsel, McCarthy & Holthus, and McCarthy & Holthus has previously represented banks and other lenders. A trustee "must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith."[32] But there is no evidence that McCarthy & Holthus ever

---

[31] CP at 55. The Wilsons have appended an additional declaration to their opening brief that addresses the summer 2013 visit to the Poulsbo office in more detail. But this declaration was not part of the record before the trial court and we do not consider it. RAP 10.3(8).

[32] Lyons, 181 Wn.2d at 787.

9

represented Chase in these proceedings or that Quality's relationship with McCarthy & Holthus affected its duties to the Wilsons.

Finally, the Wilsons assert that Quality committed various discovery violations and that they submitted declarations with forged signatures. But these issues were either not raised by the Wilsons below or rest on materials outside the record. "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court."[33]

Affirmed.

WE CONCUR:

_____

Trickey, ACJ

_____

Appelwick J

_____

[33] RAP 9.12.