**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| FOLWEILER CHIROPRACTIC PS, | ) | No. 81520-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SAFECO INSURANCE COMPANY OF | ) | |
| AMERICA AND FIRST NATIONAL | ) | |
| INSURANCE COMPANY, d/b/a | ) | |
| SAFECO CVO-WASHINGTON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellants. | ) | |
| | ) | |

MANN, C.J. — Folweiler Chiropractic, PS, (Folweiler) filed a class action complaint against Safeco Insurance Company of America, and First National Insurance Company, d/b/a Safeco CVO-Washington (collectively "Safeco"), alleging that Safeco's practice of using a computer database to assess whether the amount billed by medical providers was reasonable violated Washington law, including the Consumer Protection Act (CPA), chapter 19.86 RCW.

Safeco appeals the trial court's order denying its motion to dismiss, as well as the trial court's order granting Folweiler's motion for class certification. Safeco argues that: (1) a prior class action settlement bars Folweiler's claims; (2) Folweiler's equitable assignment theory does not give it standing to pursue its claims; (3) Folweiler's patients

Citations and pin cites are based on the Westlaw online version of the cited material.

have not suffered a cognizable injury; and (4) express assignment, rather than equitable assignment, is required for Folweiler to litigate its patient's statutory claims. Because the prior class action settlement bars Folweiler's claims, we reverse and remand to the trial court to dismiss Folweiler's claims.

FACTS

A. Background

Washington law requires automotive insurers to offer personal injury protection (PIP) coverage as an included option in insurance policies. RCW 48.22.085; RCW 48.22.095. PIP coverage includes medical and hospital benefits, which are payments for medical expenses incurred by or on behalf of the insured in an automotive accident. RCW 48.22.020(1)(a); RCW 48.22.005(7).

When Safeco receives a medical provider's bill, it determines if (1) the medical provider administered treatment related to the automobile accident and (2) if the amount billed is reasonable. To determine if the amount billed is reasonable, Safeco relies on the FAIR Health Database—a database that compares the bill to the cost of the same treatment in a common geographic area. Safeco then pays the bill up to the 80th percentile in the database.

Safeco's use of software databases to determine the reasonableness of providers' bills has been the subject of much litigation. In 2014, Safeco and its affiliate, Liberty Mutual, were sued in a putative multistate class action in Illinois. Lebanon Chiropractic Clinic, PC v. Liberty Mut. Ins. Co., No. 5-15-0111, 2016 IL App (5th) 150111-U, 2016 WL 546909 (Feb. 9, 2016).

The parties reached a class settlement wherein Safeco and Liberty Mutual would pay PIP claims at the 80th percentile of the FAIR Health Database for five years.[1] In return, class members stipulated that such payments satisfy all of Safeco and Liberty Mutual's legal and contractual obligations, and that class members would not bring claims alleging otherwise.

Following the Lebanon settlement, Chan Healthcare Group, PS (Chan) brought a collateral attack against the settlement in Washington, arguing that the interests of the Washington class members were not adequately represented in the Illinois action. Chan Healthcare Grp. PS v. Liberty Mut. Fire Ins. Co. and Liberty Mut. Ins. Co., 192 Wn.2d 516, 518, 431 P.3d 484 (2018). The trial court certified a class, sustained Chan's due process attack on Lebanon, and held that Washington medical providers could bring CPA claims barred by the Lebanon settlement. This court reversed on discretionary review, rejecting the due process argument and enforcing the Lebanon settlement against Chan. Chan Healthcare, 192 Wn.2d at 523. The Washington Supreme Court unanimously affirmed, holding that the full faith and credit clause required it to enforce the Illinois Court's judgment. Chan Healthcare, 192 Wn.2d at 518.

B. Procedure

Folweiler is a professional services corporation that provides chiropractic care and massage therapy in King County. On March 12, 2019, Folweiler, a member of the Lebanon settlement class, filed a class action complaint against Safeco. Despite Safeco's compliance with its Lebanon obligations, Folweiler alleged that Safeco's bill-review procedures violated the PIP statute, the Office of the Insurance Commissioner's

---

[1] This settlement is hereinafter referred to as the Lebanon settlement.

regulations governing investigation of claims (WAC 284-30-330, WAC 284-30-395), and the CPA. Folweiler claimed damages based on the reduced payment of its bills and administrative expenses derived from the difficulty of managing Safeco's payment system.

Safeco moved for summary judgment and dismissal based on the Lebanon settlement. The trial court granted the motion in part, stating that "the way [it read] Lebanon is frankly . . . that Dr. Folweiler can't bring suit on his own behalf." The court, however, permitted Folweiler to file an amended complaint.

Folweiler filed an amended complaint claiming that providers have "equitable assignment" of their patients' policy benefits, as well as the statutory and WAC rights that govern the policy. Folweiler claimed it derived this equitable assignment from the direct billing relationship between the provider and insurer, the payments of which are authorized by the insured.[2]

Safeco moved to dismiss on the grounds that Folweiler was not a valid assignee of any patient claims and that its new allegations did not overcome the Lebanon covenant not to bring claims. Folweiler concurrently moved for class certification.

The trial court denied Safeco's motion and granted class certification to Folweiler. In doing so, it stated that Folweiler and other providers have standing as equitable assignees of their patients' rights under Safeco's policy and under Washington law. In addition, the court held that the equitable assignment allows Folweiler to bring per se CPA claims.

---

[2] Although the authorizing documents permit Safeco to make payments to providers, they do not expressly assign the provider with any legal claims or statutory rights.

-4-

In light of the trial court's decisions, Folweiler again amended its complaint. Folweiler now includes a per se CPA claim, claims involving the PIP Statute, and WAC regulations governing the investigation of claims.

Safeco sought, and we granted, discretionary review.

ANALYSIS

Safeco argues that the Lebanon settlement bars Folweiler's claims, including its "equitable assignment" claims. We agree.

"We review a trial court's ruling on a motion to dismiss under CR 12(b)(6) de novo, as a question of law." McAfee v. Select Portfolio Servicing Inc., 193 Wn. App. 220, 226, 370 P.3d 25 (2016). We interpret settlement agreements as we do contracts. McGuire v. Bates, 169 Wn.2d 185, 188, 234 P.3d 205 (2010). When a court relies on inferences drawn from extrinsic evidence, interpretation of a contract is a question of fact. Berg v. Hudesman, 115 Wn.2d 657, 667-68, 801, P.2d 222 (1990). But contract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co., 176 Wn.2d 502, 517, 296 P.3d 821 (2013).

Courts interpret contracts to give effect to the intent of the parties at the time they entered the contract. Berg, 115 Wn.2d at 663. In doing so, they attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.2d 262 (2005). Courts impute an intention corresponding to the reasonable meaning of the words used, giving words their ordinary, usual, and popular meaning unless the entirety of the agreement clearly

demonstrates a contrary intent. Hearst, 154 Wn.2d at 504. Courts do not interpret what was intended to be written but what was written. Hearst, 154 Wn.2d at 504.

The Lebanon settlement, to which Folweiler is contractually bound, states that class members shall:

> B. Stipulate that [Safeco's] payment of Future Claims in accordance with [the Lebanon settlement] does not breach any duty or obligation under any applicable law or contract requiring [Safeco] to pay or reimburse usual, customary, or reasonable charges for Covered Treatments; and

> C. Refrain from asserting, initiating, filing, commencing, prosecuting, or maintaining in any action or proceeding of any kind, whether before any court, agency, or arbitrator, any challenge of any kind to [Safeco's] payment of Future Claims.

The settlement's broad language is clear: Folweiler and other Lebanon class members contractually agreed that they would not bring any action or proceeding of any kind challenging Safeco's payment of future claims. This language is broad enough to include claims brought on behalf of third parties under a claim of an equitable assignment. Folweiler's attempt to bring action on behalf of its patients is an action or proceeding challenging Safeco's payment future claims—precisely the type of action that Folweiler is contractually prohibited from bringing under the plain language of the Lebanon settlement.

Folweiler argues that it can avoid the plain language of the Lebanon settlement because the claims are brought on behalf of its equitable assignees—its patients. Folweiler relies on Federal Financial Co. v. Gerard, 90 Wn. App. 169, 182, 949 P.2d 412 (1998), to contend that Folweiler's rights are coextensive with the rights of its patient-assignors at the time of assignment. Thus, Folweiler argues, because its

patients are not bound by the <u>Lebanon</u> settlement, it is similarly not bound.  We disagree.

Federal Financial addressed whether the assignee of a promissory note formerly held by the Federal Deposit Insurance Corporation (FDIC) could rely on the extended statute of limitations under federal law when suing on the note.  In answering in the affirmative, this court relied on the well-established principal that an assignee's rights are coextensive with the assignor at the time of assignment.  Thus the assignee, FFC, could avail itself of the longer federal statute of limitations that had been available to the FDIC.  <u>Federal Financial</u>, 90 Wn. App. at 182-83.  But here, unlike <u>Federal Financial</u>, Folweiler is not barred by a statute, but is instead contractually bound not to bring action of any kind.  Folweiler cannot avoid its contractual commitment by bringing claims on behalf of others.  Doing so undermines the plain language of the settlement.

Because of Folweiler's participation in the <u>Lebanon</u> settlement and its broad prohibitions on litigation, it may not bring any action or proceeding of any kind, including an action based on direct or equitable assignment.[3]

Reversed and remanded for proceedings consistent with this opinion.

_____Mann, C.J._____

WE CONCUR:

_____Dwyer, J._____      _____Andrus, A.C.J._____

---

[3] Because we agree with Safeco's argument that Folweiler is barred by the <u>Lebanon</u> settlement, we do not address Safeco's additional arguments.