[No. 55253-8-I.   Division One.   May 22, 2006.]

HOLIDAY RESORT COMMUNITY ASSOCIATION ET AL., *Appellants*, v.
ECHO LAKE ASSOCIATES, L.L.C., ET AL., *Defendants*,
MANUFACTURED HOUSING COMMUNITIES OF
WASHINGTON, *Respondent*.

212

214

*Ishbel M. Dickens* (of *Columbia Legal Services*), for appellants.

*Walter H. Olsen, Jr.* (of *Olsen Law Firm, P.L.L.C.*), for respondent.

¶1 SCHINDLER, A.C.J. — Under the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, a tenant has the right to a one-year rental term which is then automatically renewed unless the tenant expressly waives that right in writing. According to the language in the 1997 "Manufactured Home Lot One-Year Rental Agreement" (1997 Rental Agreement), drafted by Manufactured Housing Communities of Washington (MHCW) for its mobile home park owner and manager members, unless a tenant requests renewal of the one-year rental term prior to its expiration, the tenant agrees to convert to a month-to-month tenancy, waives the right to automatically renew for a one-year rental term, and forfeits the statutory right to revert to a year-long term in the future.

¶2 A tenant association and several individual mobile home owners (collectively the tenants) allege the 1997 Rental Agreement is contrary to the MHLTA and violates the Consumer Protection Act (CPA), chapter 19.86 RCW. Below, MHCW argued that because it has no contractual or statutory relationship with the tenants, the tenants do not

have standing to bring a declaratory judgment action or a CPA claim. MHCW also argued that as a matter of law, there was no justiciable controversy, the 1997 Rental Agreement did not violate the MHLTA, and the tenants could not establish the elements of a CPA claim. The trial court agreed with MHCW, dismissed the tenants' lawsuit, and awarded MHCW attorney fees under the MHLTA. The court ruled the tenants did not have standing to sue MHCW and the 1997 Rental Agreement does not violate the MHLTA or the CPA. On appeal, the tenants contend they have standing to bring a CPA claim against MHCW. The tenants also challenge the trial court's decision that the 1997 Rental Agreement does not contravene the MHLTA, that the tenants cannot establish a CPA claim, and that MHCW was entitled to an award of attorney fees under the MHLTA.[1] We conclude the tenants have standing to sue MHCW. We also conclude the 1997 Rental Agreement violates the MHLTA and material issues of fact preclude dismissal of the tenants' CPA claim against MHCW. We reverse the trial court's decision to dismiss the CPA claim and remand.[2]

## FACTS

¶3 Echo Lake Associates (Echo Lake) is the most recent owner of the Holiday Resort Mobile Home Park (Holiday Resort). Holiday Resort is a 73-lot mobile home park located in Shoreline, King County. The Holiday Resort Community Association is a nonprofit corporation representing tenants who own mobile homes and rent lots at Holiday Resort. Many of the tenants are long-term residents of Holiday Resort. A majority of the tenants routinely renewed their one-year rental agreements at Holiday Resort.

---

[1] On appeal, the tenants do not argue and, therefore, concede their other claims were properly dismissed. *See* RAP 10.3(a)(5); *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 689 n.4, 974 P.2d 836 (1999) (only issues properly briefed and argued are considered by the appellate court).

[2] Because we reverse the CR 12(b)(6) and CR 56 orders dismissing the CPA claim, we also reverse the decision to award attorney fees under the MHLTA.

¶4 MHCW is a nonprofit corporation with its principal place of business in Olympia. MHCW represents over 500 mobile home park owners and managers in the state of Washington.[3] As part of the services it provides, MHCW drafts and distributes forms to its members, including a manufactured home lot one-year rental agreement.

¶5 It appears from the limited record in this case that over the years there were different versions of MHCW's manufactured home lot one-year rental agreement that were used by the Holiday Resort owners. Up until 1997, the rental agreement drafted by MHCW included a provision automatically renewing the tenant's original one-year rental term for an additional year unless the tenant specifically asked for a different term and signed a written waiver. For example, when Grace Hundtoft moved to Holiday Resort in 1990, she signed the "**MOBILE HOME LOT ONE-YEAR RENTAL AGREEMENT**" "PREPARED FOR USE OF PAID MEMBERS OF WASHINGTON MOBILE HOME PARK OWNERS ASSOCIATION BY LEGAL COUNSEL—1989." The 1989 rental agreement expressly includes a provision stating that the original one-year term is automatically renewed. "[S]ubject to the provisions of RCW 59.20.090, at the conclusion of the twelve (12) month term of this Rental Agreement, this Rental Agreement and tenancy automatically renew as provided by law."[4]

¶6 By contrast, the "**MANUFACTURED HOME LOT ONE-YEAR RENTAL AGREEMENT**" "PREPARED FOR USE OF PAID MEMBERS OF WASHINGTON MOBILE HOME PARK OWNERS ASSOCIATION BY LEGAL COUNSEL—1997" (1997 Rental Agreement) states that the tenant waives the right to renew the original one-year term and agrees to convert to a month-to-month tenancy

---

[3] MHCW is also a member of a national association, the Manufactured Housing Institute.

[4] The 1993 version of the form rental agreement drafted by MHCW contains similar language.

unless the tenant specifically and expressly requests otherwise prior to expiration of the original agreement.[5]

¶7 Relying on the language in the 1997 Rental Agreement, Echo Lake raised the rent at Holiday Resort in September 2002, in April 2003, and again eight months later, in December 2003. In January 2004, the Holiday Resort Community Association, together with individual tenants Egla Lopez, Linda McFarland, and William Darby sued Echo Lake and MHCW. The tenants claimed Echo Lake was able to impermissibly raise the rent multiple times under the 1997 Rental Agreement and alleged the 1997 Rental Agreement violates the MHLTA and the CPA.[6] The tenants requested a declaratory judgment, a preliminary and permanent injunction, and damages.[7]

¶8 In May 2004, the tenants settled their claims against Echo Lake, leaving MHCW as the only remaining defendant. Before engaging in discovery, MHCW filed a motion to dismiss under CR 12(b)(6) and a motion for summary judgment under CR 56. MHCW argued the tenants did not have standing to bring a CPA or declaratory judgment action. MHCW also argued that as a matter of law, the 1997 Rental Agreement did not violate the MHLTA and it was not an unfair business practice or the cause of the tenants' alleged injuries under the CPA.

¶9 The trial court granted MHCW's CR 12(b)(6) motion to dismiss. The court ruled the tenants did not have standing to sue MHCW and there was no justiciable controversy. The trial court also dismissed the tenants' lawsuit against MHCW under CR 56. The court ruled the 1997 Rental Agreement did not violate the MHLTA and there

---

[5] As with previous versions, the 1997 Rental Agreement has the MHCW stamp on it. Holiday Resort apparently started using MHCW's 1997 Rental Agreement in 1998.

[6] *See* RCW 59.20.090(2) (landlord may increase rent upon expiration of the rental term after providing notice three months in advance).

[7] The tenants also requested class certification for 47 household members who rent mobile home lots at Holiday Resort.

was no connection between the alleged CPA violation and the tenants' injuries.[8] The court granted MHCW's request for attorney fees under the MHLTA, RCW 59.20.110, and awarded MHCW $15,327. The tenants appeal and challenge the trial court's decision to dismiss the CPA claim and its decision to award attorney fees to MHCW under the MHLTA.

## ANALYSIS

*Standard of Review*

¶10 The tenants contend the trial court erred in ruling they did not have standing and dismissing their CPA claim under CR 12(b)(6) and CR 56.

¶11 A complaint can be dismissed under CR 12(b)(6) for "failure to state a claim upon which relief can be granted." Whether a CR 12(b)(6) dismissal is appropriate is a question of law an appellate court reviews de novo. *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998). A dismissal for failure to state a claim under CR 12(b)(6) is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting *Bowman v. John Doe Two*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)). In undertaking such an analysis, "a plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record." *Tenore*, 136 Wn.2d at 330. A CR 12(b)(6) motion should be granted " 'sparingly and with care' " and " 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *Tenore*, 136 Wn.2d at 330 (quoting *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)). " '[A]ny hypothetical situation conceivably raised

---

[8] The court also ruled that the 1997 Rental Agreement was not unconscionable or a contract of adhesion.

by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim.'" *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995) (quoting *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978)).

■■ ¶12  We review a summary judgment de novo and consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Hubbard v. Spokane County*, 146 Wn.2d 699, 707, 50 P.3d 602 (2002). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Only when reasonable minds could reach but one conclusion on the evidence should the court grant summary judgment. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274 (2003).

*Standing*

¶13  The trial court ruled the tenants did not have standing to bring a CPA claim because there was no privity of contract with MHCW. MHCW argues on appeal, as it did below, that because it has no statutory relationship with the tenants under the MHLTA and it is neither a landlord nor a party to the 1997 Rental Agreement, the tenants do not have standing to sue under the CPA. It is undisputed the tenants' CPA claim is based on the 1997 Rental Agreement and there is no statutory or contractual relationship between the tenants and MHCW under the MHLTA. But the tenants contend the trial court erred in deciding privity of contract was necessary to bring a CPA claim alleging an unfair or deceptive act or practice against MHCW. We agree with the tenants.

■ ¶14  As a general rule and as a matter of legislative intent, neither the CPA nor case law require privity of contract in order to bring a CPA claim alleging an unfair or deceptive act or practice. And on numerous occasions, our courts have rejected the argument that a contractual rela-

tionship must exist to sue under the CPA for an unfair or deceptive act or practice.

¶15 The purpose of the CPA is "to protect the public and foster fair and honest competition." RCW 19.86.920. In the CPA, the legislature unequivocally states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." RCW 19.86.020. The legislature also states that the CPA "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920. The CPA is "a carefully drafted attempt to bring within its reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce." *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984).

¶16 In 1970, the legislature created a private right of action to sue under the CPA.[9] RCW 19.86.090 provides, in pertinent part:

> Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action . . . to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee.

¶17 One way a plaintiff can establish an unfair or deceptive act or practice in trade or commerce is to show a per se violation of a regulation or statute. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 62, 1 P.3d 1167 (2000). The Supreme Court has held that a violation of the regulations defining specific acts and practices that constitute a breach of an insurer's duty of good faith is a per se unfair practice under the CPA. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986).[10]

¶18 MHCW relies on a CPA case alleging a per se violation, *Litho Color, Inc. v. Pac. Employers Ins. Co.*, 98

---

[9] Until the 1970 amendment, there was no statutory or common law CPA private right of action. *Johnston v. Beneficial Mgmt. Corp.*, 85 Wn.2d 637, 640, 538 P.2d 510 (1975).

[10] Washington Administrative Code (WAC) 284-30-300 through -800 defines the specific acts and practices that constitute a breach of an insurer's duty of good faith.

Wn. App. 286, 991 P.2d 638 (1999), to argue that the absence of privity of contract is fatal to the tenants' CPA claim. *Litho Color* stands for the proposition that only an insured may bring an action against an insurer alleging a per se violation of the CPA. *See also Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 418, 693 P.2d 697 (1985); *Kagele v. Aetna Life & Cas. Co.*, 40 Wn. App. 194, 698 P.2d 90 (1985). *Litho Color* and the line of cases it follows, *Green v. Holm*, 28 Wn. App. 135, 622 P.2d 869 (1981) and *Tank v. State Farm Fire & Casualty Co.*, 38 Wn. App. 438, 446, 686 P.2d 1127 (1984), *aff'd in part, rev'd in part on other grounds*, 105 Wn.2d 381, 715 P.2d 1133 (1986), are inapposite to an unfair or deceptive act or practice CPA claim. Apart from per se CPA violations, our courts have imposed the requirement of contractual privity to sue under the CPA in only one other context—alleged antitrust violation. *See Blewett v. Abbott Labs.*, 86 Wn. App. 782, 938 P.2d 842 (1997) (only direct purchasers and the attorney general are antitrust enforcers under the CPA in Washington).

¶19 Here, the tenants do not allege a per se CPA violation. The tenants allege the 1997 Rental Agreement drafted and disseminated by MHCW is an unfair or deceptive act occurring in trade or commerce that directly affects the tenants. Relying on *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993) and *Escalante v. Sentry Insurance Co.*, 49 Wn. App. 375, 743 P.2d 832 (1987), the tenants assert privity of contract is not necessary.

¶20 In *Fisons*, the Washington Supreme Court held that a physician had standing to bring a CPA claim against a drug manufacturer for inadequate warnings regarding a drug prescribed by the physician even though the physician was not the consumer. And in *Escalante*, this court held that a passenger in a car accident had standing to bring a CPA claim based on the insurer's bad faith in handling the insurance claim, even though the passenger was not a party to the insurance contract, did not pay premiums, and had no consumer relationship with the insurer. *Escalante*, 49

Wn. App. at 387.[11] As in the *Fisons* and *Escalante* line of cases, we conclude the tenants have standing to sue MHCW under the CPA for an unfair or deceptive act or practice.[12]

*CPA Claim and MHLTA*

¶21 If the tenants have standing, MHCW argues that dismissal of the CPA claim was not error because the 1997 Rental Agreement does not violate the MHLTA and, therefore, is not an unfair or deceptive act or practice under the CPA. MHCW also argues the CPA claim was properly dismissed because the tenants cannot establish injury that is causally related to an unfair or deceptive act.

¶22 Statutory interpretation is a question of law, which this court reviews de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). "The primary goal of statutory construction is to carry out legislative intent." *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Legislative intent is determined primarily from the statutory language, viewed "in the context of the overall legislative scheme." *Subcontractors & Suppliers Collection Servs. v. McConnachie*, 106 Wn. App. 738, 741, 24 P.3d 1112 (2001). Each statutory provision should be read together with others "to achieve a harmonious and unified statutory scheme." *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000).

¶23 Enacted in 1977, the MHLTA regulates and determines the legal rights, remedies, and obligations arising from a rental agreement between a mobile home lot tenant and a mobile home park landlord. RCW 59.20.040.

---

[11] *See also First State Ins. Co. v. Kemper Nat'l Ins. Co.*, 94 Wn. App. 602, 971 P.2d 953 (1999) (excess insurer had standing to bring CPA claim against primary insurer); *State Farm Fire & Cas. Co. v. Quang Huynh*, 92 Wn. App. 454, 962 P.2d 854 (1998) (insurance company had standing to bring CPA claim against a chiropractor for submitting false bills on behalf of insured).

[12] Because of our disposition, we do not address the argument raised below by the tenants that the court lacked jurisdiction to enter the order on summary judgment after concluding the tenants had no standing and granting the CR 12(b)(6) motion to dismiss.

The MHLTA requires a mobile home park landlord to provide a written agreement for a one-year rental term to the tenant at the beginning of the tenancy. If, instead, the tenant wants a month-to-month tenancy, the tenant must explicitly waive the right to a one-year rental term in writing. And even if the tenant waives the right to a one-year term and agrees to a different term, the tenant has the right to require the landlord to provide a rental agreement for a year-long rental term at any anniversary date.[13] RCW 59.20.050(1). RCW 59.20.050(1) provides:

> (1) No landlord may offer a mobile home lot for rent to anyone without offering a written rental agreement for a term of one year or more. . . . Anyone who desires to occupy a mobile home lot for other than a term of one year or more may have the option to be on a month-to-month basis but must waive, in writing, the right to such one year or more term: PROVIDED, That annually, at any anniversary date of the tenancy the tenant may require that the landlord provide a written rental agreement for a term of one year.

¶24 At the end of the initial year, a mobile home lot rental agreement is automatically renewed for a one-year term unless the tenant enters into an agreement that provides a different term. RCW 59.20.090(1) states:

> Unless otherwise agreed rental agreements shall be for a term of one year. Any rental agreement of whatever duration shall be automatically renewed for the term of the original rental agreement, unless a different specified term is agreed upon.

¶25 Under the MHLTA, rental agreements cannot contain any provision waiving a tenant's statutory rights. RCW 59.20.060(2)(d) provides, in pertinent part:

> (2) Any rental agreement executed between the landlord and tenant shall not contain any provision:
>
> . . . .

---

[13] And even in the absence of a written agreement, our court has held there is an implied agreement for a rental term of one year. *Gillette v. Zakarison*, 68 Wn. App. 838, 846 P.2d 574 (1993).

(d) By which the tenant agrees to waive or forego rights or remedies under this chapter; . . .

¶26 In the 1997 Rental Agreement drafted by MHCW, unless the tenant expressly requests an extension of the one-year term before the end of the original rental term, the tenant agrees to waive the right to another year-long rental term. If the tenant does not timely request an extension, the tenant agrees to convert to a month-to-month tenancy. Another consequence of failing to timely request an extension is the tenant also agrees to waive the right to require the landlord provide a rental agreement for a one-year term at the anniversary date of the tenancy. The 1997 Rental Agreement provides, in pertinent part:

> Tenant agrees that upon expiration of the original term, the Agreement shall automatically renew for a period of one month, and shall thereafter be a tenancy from month-to-month, unless Tenant requests an additional one-year term prior to the end of the original term.

¶27 MHCW contends the 1997 Rental Agreement does not violate the MHLTA because RCW 59.20.090(1) allows the tenant to agree to renew for a term other than the presumptive one-year term and to convert to a month-to-month tenancy. MHCW relies on the language "unless a different . . . term is agreed upon" in RCW 59.20.090(1) to argue the language of the 1997 Rental Agreement does not violate the MHLTA. We conclude MHCW's interpretation is contrary to legislative intent and ignores the other statutory provisions in the MHLTA.

¶28 To promote long term and stable mobile home lot tenancies, the legislature established an unqualified right at the beginning of the tenancy to a one-year term, automatic renewal at the end of the one-year rental term, and the right to a one-year term at any anniversary date of the tenancy.

¶29 The language in the 1997 Rental Agreement waiving the tenant's right to renew and converting to a month-to-month tenancy is also inconsistent with the statutory

provisions in RCW 59.20.050(1) and RCW 59.20.060(2)(d). To properly interpret a statute, courts must read statutory provisions together, not in isolation. *Judd v. Am. Tel. & Tel. Co.*, 152 Wn.2d 195, 203, 95 P.3d 337 (2004). The language in RCW 59.20.090 must be interpreted together with the requirements of RCW 59.20.050(1) and RCW 59.20.060(2)(d). RCW 59.20.050(1) requires a tenant to waive the right to the one-year rental term in writing. RCW 59.20.060(2)(d) does not allow a tenant to waive rights under the MHLTA in a rental agreement. Reading the requirements of RCW 59-.20.050(1) and RCW 59.20.060(2)(d) together with RCW 59-.20.090(1), we conclude that any agreement under RCW 59.20-.090(1) to a rental term other than one year or any agreement to waive the right to renew must also be in writing separate from the rental agreement.

¶30 The 1997 Rental Agreement provision also violates the MHLTA in other ways. The presumptive rental term under the MHLTA is a year, unless a different rental term is explicitly requested in writing. RCW 59.20.050(1). The 1997 Rental Agreement drafted by MHCW is precisely the opposite. Under the 1997 Rental Agreement, at the end of the original term, the presumptive rental term is a month-to-month tenancy. And instead of automatically renewing the original one-year term, the 1997 Rental Agreement places the burden on the tenant to explicitly request renewal of the one-year term. In addition, in the 1997 Rental Agreement, the tenant gives up the right to require the landlord provide a one-year rental agreement at any anniversary of the tenancy. We conclude the 1997 Rental Agreement violates the MHLTA.

¶31 If the 1997 Rental Agreement violates the MHLTA, MHCW argues in the alternative that the tenants cannot establish the elements of a CPA claim. There are five essential elements of a CPA claim: (1) an unfair or deceptive act or practice (2) that occurs in trade or commerce, (3) impacts the public interest, (4) which causes injury to the plaintiff in his or her business or property, and (5) the

injury is causally linked to the unfair or deceptive act. *Guijosa v. Wal-Mart Stores, Inc.* 144 Wn.2d 907, 917, 32 P.3d 250 (2001); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The failure to establish any of the elements is fatal to a CPA claim. *Hangman Ridge,* 105 Wn.2d at 793. The first two elements may be established by showing that an unfair or deceptive act or practice has the capacity to deceive a substantial portion of the public and has occurred in the conduct of trade or commerce. *Hangman Ridge*, 105 Wn. 2d at 785-86. The plaintiff must show it had the capacity to deceive a substantial portion of the public, but a plaintiff does not need to show the act or practice was intended to deceive. *Hangman Ridge*, 105 Wn. 2d at 785-86; *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 30, 948 P.2d 816 (1997); *Dwyer v. J.I. Kislak Mortgage Corp.*, 103 Wn. App. 542, 547, 13 P.3d 240 (2000). *Hangman Ridge* also requires a showing of impact to public interest separate and apart from showing an unfair and deceptive act. *Hangman Ridge*, 105 Wn.2d 789-92. This court in *Ethridge v. Hwang*, 105 Wn. App. 447, 20 P.3d 958 (2001), held the CPA applies to mobile home tenancies.

¶32 The CPA does not define "unfair or deceptive act or practice." Whether an alleged act is unfair or deceptive is a question of law. *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997); *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 814 P.2d 670 (1991). Implicit in the definition of "deceptive" under the CPA is the understanding that the practice misleads or misrepresents something of material importance. *See, e.g., Potter*, 62 Wn. App. at 327 (failure to reveal a material fact known to the seller and that the seller in good faith is bound to disclose may be classified an unfair or deceptive act due to its inherent capacity to deceive).

¶33 While we conclude the language in the 1997 Rental Agreement contravenes the MHLTA and is an unfair act or practice under the CPA, whether the 1997 Rental Agreement has the capacity to deceive a substantial

portion of the public is a question of fact. *Hangman Ridge*, 105 Wn.2d at 789-90. Here, the tenants allege the language in the 1997 Rental Agreement not only misstates the law but also has the capacity to deceive a substantial portion of the public because it is available for dissemination to the more than 500 MHCW members who are mobile home park owners or managers.

¶34 MHCW also argues the tenants' CPA claim was properly dismissed because any injury sustained by the tenants was not caused by MHCW but rather by the landlord's decision to raise the rent. With regard to the causation element of the CPA, the tenants must establish damages and a causal link between the deceptive act and the injury suffered. *Fisons*, 122 Wn.2d at 314; *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 167, 795 P.2d 1143 (1990). Proximate causation is typically a question of fact for the jury. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 753-56, 818 P.2d 1337 (1991); *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 142, 727 P.2d 655 (1986); *Fisons*, 122 Wn.2d at 314. Under a one-year long tenancy, the landlord cannot raise the rent more than once a year. RCW 59.20.060(2)(c). The tenants allege that by including language automatically converting the tenancy to a month-to-month tenancy in contravention of the MHLTA, the landlord was able to raise rent more than once a year. Material issues of fact exist concerning the causal link between the 1997 Rental Agreement and the tenants' alleged injury under the CPA.[14] On remand, the tenants will need to prove damages caused by the 1997 Rental Agreement and a causal link.

## CONCLUSION

¶35 The tenants have standing to bring a CPA claim against MHCW. The 1997 Rental Agreement drafted and disseminated by MHCW to its members contravenes the

---

[14] There is also a material question of fact regarding whether the landlord was a member of MHCW or authorized to use the 1997 Rental Agreement.

MHLTA. The tenants have alleged sufficient facts in their complaint to prove a CPA claim under CR 12(b)(6). Because there are material issues of fact, the trial court erred in granting summary judgment and dismissing the tenants' CPA claim under CR 56. We reverse and remand.[15]

BAKER and AGID, JJ., concur.

Reconsideration denied August 15, 2006.

Reveiw denied at 160 Wn. 2d 1019 (2007).

---

[15] RCW 59.20.220 provides for an award of fees in "any action arising out of" the MHLTA. We disagree with the trial court's conclusion that the tenants' CPA claim arises out of the MHLTA. Should MHCW prevail, they are not entitled to attorney fees under the MHLTA, RCW 59.20.110. Should the tenants prevail on their CPA claim, they would be entitled to request attorney fees under the CPA.