192 P.3d 378 (2008)
LITTLE MOUNTAIN ESTATES TENANTS ASSOCIATION, a Washington Non-profit corporation, as assignee, Jerry Jewett Virginia Hadleman, Marie McCutchin, and Wes Walton, on behalf of themselves and classes of similarly situated persons, Appellants,
v.
LITTLE MOUNTAIN ESTATES MHC LLC, a Limited Liability Company, Peregrine Holdings, LLC, Kevin A. Ware and Kari M. Ware, husband and wife and the marital community composed thereof, Respondents.
No. 57810-3-I.
Court of Appeals of Washington, Division 1.
July 21, 2008.
Publication Ordered September 15, 2008.
*379 Thomas P. Sughrua, Sughrua & Associates, Seattle, WA, T. Reinhard G `ron' Wolff, Attorney at Law, Conway, WA, Philip James Buri, Buri Funston Mumford PLLC, Bellingham, WA, for Appellants.
C. Thomas Moser, Attorney at Law, Mount Vernon, WA, Michael Barr King, Sidney Charlotte Tribe, Talmadge Fitzpatrick PLLC, Tukwila, WA, Troy Robert Nehring, Olsen Law Firm PLLC, Kent, WA, for Respondents.
SCHINDLER, C.J.
¶ 1 The Manufactured/Mobile Home Landlord Tenant Act (MHLTA), chapter 59.20 RCW, governs the legal rights and obligations between mobile home park landlords and tenants. Under the MHLTA, a tenant has the right to assign a rental agreement. A rental agreement cannot contain any provision that waives a tenant's rights under the MHLTA, and if a provision in the rental agreement conflicts with the MHLTA, it is unenforceable. The "Little Mountain Estates 25 Year Lease Agreement," contains a rent adjustment formula tied to the Consumer Price Index (CPI) and a provision stating that when a tenant assigns a lease to a new owner, the remainder of the tenant's 25-year term is automatically converted to a one-year or a two-year term. We reject the tenants' argument that the court erred in enforcing the rent adjustment formula in the lease agreement. However, because the tenants had the right to assign their leases under the *380 MHLTA and could not waive that right in the lease agreement, we reverse the trial court's determination that as a matter of law the conversion clause in the 25-year lease agreement did not violate the MHLTA. We also remand to address the tenants' Consumer Protection Act (CPA), chapter 19.86 RCW, claim.

FACTS
¶ 2 In August 2002, the Little Mountain Estates Tenants Association and tenants Jerry Jewett, Virginia Haldeman, Marie McCutchin, and Wes Walton (collectively "the tenants") sued Little Mountain Estates Manufactured Home Community, LLC (LME).
¶ 3 LME was built in the early 1990s as an upscale, gated, 120-lot manufactured housing community for older adults. LME struggled to find tenants because of the economic and political instability in the early 1990s. In an effort to attract tenants, LME entered into a marketing agreement with a manufactured homes dealer, Lamplighter Homes (Lamplighter). From 1990 to 1997, LME offered a 25-year lease with a maximum annual rent increase tied to the Consumer Price Index (CPI) to tenants who either purchased a model home from Lamplighter or purchased and moved a new manufactured home to LME. LME and Lamplighter advertised the 25-year lease through radio, brochures and other written advertisements. Some of the written advertisements state that the details of the rental agreement would be "specified in the lease."[1]
¶ 4 The new manufactured homes purchased by the tenants cost between $60,000 and $80,000. To "[i]nsure quality and overall community appearance" of LME, the tenants also had to comply with the requirements of the "Little Mountain Estates Park Amenity Package" prior to moving in. The mandatory amenity package included requirements to install concrete slabs, a concrete sidewalk to the street or a driveway, "pit set"[2] the manufactured home on the lot, install sewer, water, and electrical connections, and complete landscaping according to the LME specifications. The cost of the improvements required by the mandatory amenity package ranged from $15,000 to $18,000.
¶ 5 It is undisputed that the tenants did not sign written lease agreements before moving in. It is also undisputed that after moving in, each of the tenants and LME entered into the "Little Mountain Estates 25 Year Lease Agreement." The lease unequivocally provides a tenancy of 25 years for a designated space at LME. The lease also sets forth the amount of rent due each month for the first year. Thereafter, the amount "shall be subject to an annual formula per Attachment A." For example, the lease signed by Jerry and Betty Jewett provides:
1. DESCRIPTION OF PREMISES: Landlord hereby leases to Tenant that certain space in the County of Skagit, State of Washington described as space number 38, Little Mountain Estates, Skagit County, Washington.
2. TERM: The term of this tenancy shall be twenty-five years commencing on 12-1-94, and continuing through Nov. 30, 2019.
3. RENT: Tenant shall pay to Landlord $310.00 per month as rent; through Nov. 30, 1995 and thereafter shall be subject to an annual adjustment formula per Attachment A....[3]
¶ 6 The assignment provision in the LME 25-Year Lease Agreement states that the lease is assignable subject to the limitations in "Attachment B."
ASSIGNMENT; SUBLETTING: This lease is assignable, providing that such assignment conforms with the limitations and language in Attachment `B'. Subletting the manufactured home, the lot space, or any part thereof is not permitted.
The one-page attachment to the 25-year lease, titled "Little Mountain Estates," includes *381 Attachment A and Attachment B. Attachment A is clearly labeled "RENT ADJUSTMENT FORMULA" and is set forth first. It contains a description of the Consumer Price Index (CPI) and the formula for calculating rent adjustments. Halfway down the page is the heading "Attachment `B.'" Attachment B does not have a similar label to explain its purpose. Attachment B states that the tenant can assign the lease to a new owner subject to the conditions set forth in five different subsections, subsections (a) to (e).
¶ 7 Subsection (a) of Attachment B requires the tenant to pay all outstanding rent, taxes, and fees prior to transferring the lease. Subsection (b) addresses the requirements for the landlord's approval of the assignment. Subsection (c) states that upon assignment, the lease agreement is automatically converted to a one-year or a two-year lease. Subsection (d) states that the assignment provision applies to all transfers and subsection (e) allows LME to assign its interest in the lease to a third party purchaser. Attachment B provides:
This lease shall be assignable by tenant only to a person to whom Tenant sells or transfers title to the manufactured home on said lot subject to the following:
(a) All outstanding taxes, rents and/or fees owed by the tenant must be paid prior to such transfer.
(b) Subject to the approval of Landlord after fifteen (15) days written notice by Tenant of such intended assignment. Landlord shall approve or disapprove of the assignment of this lease on the same basis that Landlord approves or disapproves of any new tenant or manufactured home.
(c) Upon assignment by Tenant of Tenant's leasehold interest in the homesite, this rental agreement shall automatically convert to a one (1) year lease beginning on the effective date of the assignment. The new monthly rent shall be charged by Landlord following the most recent rent increase for the park proceeding the effective date of the assignment.
(d) Assignment as defined in this paragraph shall apply to all voluntary transfers and involuntary transfers of Tenant, including a transfer between married tenants pursuant to a divorce decree, separation agreement, or similar document or order, or a transfer in a bankruptcy or other insolvency proceeding.
(e) Landlord shall assign its interest in this agreement to any third party who purchases the park.
¶ 8 One of the owners of LME, Paul Ware, testified that the 25-year lease was a means to attract tenants, but because the average age of the tenants who moved into LME was 70, LME anticipated that most of the tenants would only actually live at the mobile home park for approximately five years.
Q. [I]n order to stem the loss of money, the 25-year lease was created as an inducement?
A. Yes.
Q. And at the time that you created that inducement you knew that the average age of the people coming in was roughly 70?
A. Yes.
Q. And you knew that their average length of stay was about five years?
A. Yes.
Q. And you knew that they would have to spend anywhere between $15,000 and $18,000 to set up their home?
A. Yes.
¶ 9 According to Ware, the reason for the unadvertised assignment conversion clause in Attachment B was to maximize the owners' profits when the tenants sold their homes.
[T]he reason we did that was because at a point, you know, as the 25-year leases  if they stayed there 25-years, God loves them, we're glad that they lived that long. But if they didn't and they moved out, those leases would convert to a one-year lease, and eventually we would start getting a return for our investments.
¶ 10 The tenants' lawsuit against LME asserted that the lease agreement violated the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, and the Consumer Protection Act (CPA), chapter 19.86 RCW. The lawsuit alleged that *382 many of the tenants were unaware of the assignment conversion clause in Attachment B, the conversion of their 25-year tenancy to a one-year or two-year term reduced their ability to sell their homes, the rent adjustment formula in Attachment A was unenforceable, and LME had arbitrarily increased the rent in violation of the lease agreement. The tenants sought declaratory and injunctive relief, monetary damages, and attorney fees and costs.
¶ 11 After a series of summary judgment motions and a nine-day trial, the court enforced the assignment conversion clause and, with some modifications to the rent adjustment formula, enforced the other terms of the lease. In one of the early summary judgment motions, the court ruled as a matter of law, that the provision in Attachment B automatically converting the 25-year lease to a one-year or two-year lease upon assignment did not violate the MHLTA or the CPA.
(1) Plaintiffs' claims that paragraph 6 of the `Little Mountain Estates 25 year Lease agreement' and its `Exhibit B' violate the mobile home/manufactured landlord tenant act (RCW 59.20. et seq.) or the Consumer Protection Act (RCW 19.86 et seq.) are dismissed with prejudice; and
(2) Paragraph 6 of the "Little Mountain Estates 25 Year Lease Agreement" and its "Exhibit B" are not prohibited by the Mobile Home/Manufactured Home Landlord Tenant Act (RCW 59.20 et. seq.).[4]
¶ 12 Following trial, the court entered extensive findings of fact and conclusions of law. The court concluded that even though LME violated the MHLTA by allowing tenants to move in without first signing a lease agreement, the tenants were bound by the terms of the 25-year lease that they voluntarily entered into after moving into LME. But because the court concluded that the CPI rent formula in Attachment A did not make sense and was ambiguous, the court modified the formula. Otherwise, the court ruled that the lease was enforceable. In the conclusions of law, the court reiterated its previous ruling that the assignment conversion clause in Attachment B did not violate the MHLTA or the CPA.[5] The tenants appeal.

ANALYSIS
¶ 13 The tenants assert that the trial court erred in ruling on summary judgment that the conversion clause in Attachment B does not violate the MHLTA or the CPA. The tenants also assert that the trial court erred in enforcing the rent adjustment provision in Attachment A because the terms materially altered the terms of the offer LME made to the tenants in its advertisements.[6]
¶ 14 We review summary judgment de novo and engage in the same inquiry as the trial court. Heath v. Uraga, 106 Wash.App. 506, 512, 24 P.3d 413 (2001). Summary judgment is proper if the pleadings, depositions, answers, and admissions, together with the affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We view the facts and reasonable inferences in a light most favorable to the nonmoving party. Michak v. Transnation *383 Title Ins. Co., 148 Wash.2d 788, 794, 64 P.3d 22 (2003). Summary judgment is appropriate if, in view of all the evidence, reasonable persons could reach only one conclusion. Hansen v. Friend, 118 Wash.2d 476, 485, 824 P.2d 483 (1992).

Manufactured/Mobile Home Landlord Tenant Act
¶ 15 The tenants contend that the trial court erred in ruling on summary judgment that the provision in Attachment B converting the term of the lease from a 25-year lease to a one-year or two-year term upon assignment of the lease to a new owner did not violate the MHLTA or the CPA. The tenants assert that because a tenant has the statutory right under the MHLTA to assign the lease, and the lease cannot contain a provision that requires the tenant to waive or forego a statutory right, the conversion clause provision is unenforceable. LME asserts that the lease provision complies with the MHLTA because the tenants have the right to assign the lease, but the MHLTA does not give the tenants the right to assign the remainder of the term of the lease.
¶ 16 Statutory interpretation is a question of law we review de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, we give effect to that plain meaning. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4. We look to the legislative enactment as a whole to determine the meaning. State v. Pac. Health Ctr., Inc., 135 Wash.App. 149, 159, 143 P.3d 618 (2006). To properly interpret a statute, courts must read statutory provisions together, not in isolation. Judd v. Am. Tel. & Tel. Co., 152 Wash.2d 195, 203, 95 P.3d 337 (2004), rev. denied, 162 Wash.2d 1002, 175 P.3d 1092 (2007).
¶ 17 A statute is ambiguous if it has two or more reasonable interpretations, but not "merely because different interpretations are conceivable." Cerrillo v. Esparza, 158 Wash.2d 194, 201, 142 P.3d 155, rev. denied, 156 Wash.2d 1010, 132 P.3d 146 (2006). If a statute is ambiguous, we may resort to legislative history. Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4. "Ultimately, in resolving a question of statutory construction, this court will adopt the interpretation which best advances the legislative purpose." Bennett v. Hardy, 113 Wash.2d 912, 928, 784 P.2d 1258 (1990), quoting, In re R., 97 Wash.2d 182, 187, 641 P.2d 704 (1982).
¶ 18 The MHLTA determines the legal rights, remedies, and obligations arising from a rental agreement between a mobile home lot tenant and the mobile home park landlord. RCW 59.20.040. The legislative purpose in enacting the MHLTA was to regulate and protect mobile home owners by providing a stable, long-term tenancy for home owners living in a mobile home park. Holiday Resort, 134 Wash.App. at 224, 135 P.3d 499. According to legislative findings,
... [it] is the intent of the legislature, in order to maintain low-cost housing in mobile home parks to benefit the low income, elderly, poor and infirmed, to encourage and facilitate the conversion of mobile home parks to resident ownership, to protect low-income mobile home park residents from both physical and economic displacement, to obtain a high level of private financing for mobile home park conversions, and to help establish acceptance for resident-owned mobile home parks in the private market.
RCW 59.22.010(2). The legislature also found that "many homeowners who reside in mobile home parks are also those residents most in need of reasonable security in the siting of their manufactured homes." Former RCW 59.23.005 (1994).
¶ 19 Here, there is no dispute that, according to the signed lease agreements, the tenants have the right to a 25-year lease. Additionally, it is undisputed that the tenants have the unequivocal right to sell their mobile homes under RCW 59.20.070(1). RCW 59.70.070(1) provides that:
¶ 20 Prohibited acts by landlord. A landlord shall not:
(1) Deny any tenant the right to sell such tenant's mobile home, manufactured home, or park model within a park or require the removal of the mobile home, manufactured home, or park model from the park because of the *384 sale thereof. Requirements for the transfer of the rental agreement are in RCW 59.20.073.
¶ 21 RCW 59.20.073(1) provides that "[a]ny rental agreement shall be assignable by the tenant to any person to whom he or she sells or transfers title to the mobile home, manufactured home, or park model." The MHLTA also expressly states that any executed rental agreement between the landlord and tenant "shall not contain any provision... [b]y which the tenant agrees to waive or forego rights" under the MHLTA. RCW 59.20.060(2)(d). In addition, RCW 59.20.020 imposes an obligation to act in good faith,[7] and under RCW 59.20.040 a rental agreement "shall be unenforceable to the extent of any conflict with any provision of this chapter."
¶ 22 LME argues that as long as the landlord allows the tenant to assign the rental agreement, nothing in the statute prohibits the landlord from then converting the remaining 25-years lease term to a one-year or a two-year term. LME also asserts that because tenants voluntarily signed the lease, the tenants are bound by their agreement under general principles of contract law. But this argument ignores the MHLTA, which is the controlling law in this case.
¶ 23 The trial court also read the statute narrowly to conclude,
the provision contained in the 25-Year Lease Agreement which converted the 25-Year term of the lease (to a one or two-year term upon assignment of the lease) does not violate RCW 59.20.073, or any other provision of Chapter 59.20 RCW.
We reject LME's narrow interpretation of the MHLTA and RCW 59.20.073(1).
¶ 24 This court's primary goal in interpreting statutes is "to ascertain and give effect to legislative intent." Pac. Health Ctr., 135 Wash.App. at 158-59, 143 P.3d 618. The plain language of RCW 59.20.073(1) provides that tenants have the right to assign their rental agreements and does not contain any limitation on the right to do so. When the plain language of the statute is subject to more than one reasonable interpretation, we look to the principles of statutory construction, legislative history, and case law. Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001). And when enacting a statute, we presume the legislature knows the existing state of the case law. Woodson v. State, 95 Wash.2d 257, 266-62, 623 P.2d 683 (1980).
¶ 25 The MHLTA does not define "assignment." But the general rule under common law with respect to the assignment of contract rights is that such rights may be freely assigned unless prohibited by statute. Federal Fin. Co. v. Gerard, 90 Wash.App. 169, 177, 949 P.2d 412 (1998). An assignee of a contract "steps into the shoes of the assignor'" and has all the rights of the assignor, including all applicable statutory rights. Puget Sound Nat'l Bank v. State Dep't of Revenue, 123 Wash.2d 284, 292, 868 P.2d 127 (1994) quoting, Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wash.2d 490, 495, 844 P.2d 403 (1993). Because RCW 59.20.073(1) states that "any rental agreement shall be assignable," and the rental agreements here were for 25-year leases, we conclude that the unambiguous language of RCW 59.20.073(1) supports the conclusion that the tenants had the right to assign the remaining term of the 25-year lease.
¶ 26 Construing RCW 59.20.073(1) to mean the tenants have the right to assign the remaining term of their rental or lease agreement is also consistent with the legislative intent to protect mobile home owners.
¶ 27 In addition, Washington courts review waiver clauses strictly and enforce them only if their language is sufficiently clear. Chauvlier v. Booth Creek Ski Holdings, Inc., 109 Wash.App. 334, 339-40, 35 P.3d 383 (2001). And any agreement to waive a right under the MHLTA must be in a writing that is separate from the lease agreement. Holiday Resort Cmty. Ass'n v. Echo Lake Assoc., LLC, 134 Wash.App. 210, *385 225, 135 P.3d 499 (2006) rev. denied, 160 Wash.2d 1019, 163 P.3d 793 (2007).
¶ 28 Here, because there is no dispute that the lease agreement required the tenants to give up their right to assign the remainder of their 25-year lease, the provision is an unenforceable waiver of the tenants' rights under the MHLTA. We conclude that the assignment clause converting the 25-year lease to a one-year or two-year lease is unenforceable because it conflicts with the MHLTA.

Rent Adjustment Formula
¶ 29 The tenants also contend the trial court erred by enforcing the rent adjustment formula in Attachment A because it materially altered the terms of the offer LME made to the tenants in its brochures and advertisements. LME asserts that the advertising materials did not constitute an offer and the written agreement controls. We agree with LME.
¶ 30 An implied contract occurs when, through a course of dealing and common understanding, the parties show a mutual intent to enter into a contract. Harberd v. City of Kettle Falls, 120 Wash.App. 498, 516, 84 P.3d 1241 (2004). Generally, an advertisement is not an offer. 25 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice, § 2:12 (2d ed.2007). Here, there was no mutual intent to enter into an oral agreement. The record reveals that Little Mountain intended the lease agreement to control, as demonstrated by the fact that the advertising materials explicitly stated "[t]he details of this are specified in the lease."

Enforceability of Lease Attachments
¶ 31 The tenants contend that even if the written lease is enforceable, they did not agree to the terms of Attachment A and B which were not attached to the lease when they were executed. We review the trial court's decision in a bench trial to determine whether challenged findings are supported by substantial evidence and whether the findings support the conclusions of law. Dorsey v. King County, 51 Wash.App. 664, 668-69, 754 P.2d 1255 (1988). Findings of fact are considered verities on appeal as long as they are supported by substantial evidence in the record. In re Marriage of Thomas, 63 Wash.App. 658, 660, 821 P.2d 1227 (1991). Substantial evidence is a quantum of evidence sufficient to persuade a rational fairminded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). The tenants did not assign error to the following findings of fact:
20. The Lease provided that the 25-Year term would convert to a one or two-year term upon the 25-Year Residents' sale of their home, and assignment of the lease.
21. The Lease provided that a certain rent would be charged for the first year of the Lease, and that periodic annual adjustments to the rent would be made as provided by the Lease's `Attachment A.'
Because these findings specifically provide that the terms in Attachment A and B were part of the lease the tenants signed, we reject the argument that the lease did not include the attachments.

Consumer Protection Act
¶ 32 The tenants also assert that LME's violation of the MHLTA violated the CPA. LME contends that the lease did not violate the CPA because it did not mislead the public.
¶ 33 The purpose of the CPA is to protect citizens from unfair and deceptive trade and commercial practices. Stephens v. Omni Insurance Co., 138 Wash.App. 151, 170, 159 P.3d 10 (2007), rev. granted, 163 Wash.2d 1012, 180 P.3d 1290, 2008 LEXIS 284 (Apr. 1, 2008). To show that there is a violation of the CPA, the tenants must prove five elements: "(1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property, (5) causation." Omni Insurance, 138 Wash.App. at 166, 159 P.3d 10. The tenants' failure to establish any of the elements is fatal to their CPA claim. Holiday Resort, 134 Wash.App. at 225, 135 P.3d 499.
*386 ¶ 34 In Holiday Resort, we addressed a similar issue and held that even though the rental agreement violated the MHLTA, whether the violation had the capacity to deceive a substantial portion of the public was a question of fact. Holiday Resort, 134 Wash.App. at 226-27, 135 P.3d 499. Here, because the court did not reach the question of whether the tenants could prove a violation of the CPA, we remand.

Attorney Fees
¶ 35 Both parties request an award of attorney fees based on RCW 59.20.110. RCW 59.20.110 provides: "[i]n any action arising out of this chapter, the prevailing party shall be entitled to reasonable attorney's fees and costs." The lease agreement between the parties also provides attorney fees to the prevailing party in any action to enforce a provision of the lease. Additionally, under RAP 18.1, the prevailing party is entitled to attorney fees on appeal. Gillette v. Zakarison, 68 Wash.App. 838, 846 P.2d 574 (1993). As the prevailing party, the tenants are entitled to reasonable attorney fees upon compliance with Rap 18.1.

CONCLUSION
¶ 36 We affirm in part, reverse in part, vacate the trial court's award of attorney fees, and remand.[8]
NOTES
[1] Exhibit 16.
[2] "Pit setting" requires more excavation before setting the home than a "ground set" mobile home and is more expensive.
[3] Emphasis added.
[4] The court later dismissed park owners Kevin and Kari Ware in part, several of the tenants' causes of action, and the tenants' CPA and retaliation claims.
[5] "The provision contained in the 25-Year Lease Agreement which converted the 25-[y]ear term of the Lease (to a one or two-year term upon assignment of the Lease) does not violate RCW 59.20.073, or any other provision of [c]hapter 59.20 RCW." Findings of Fact and Conclusions of Law 7.
[6] Although the tenants also contend that the trial court erred by dismissing park owners, Kevin and Kari Ware, ruling that LME's unacknowledged leases did not violate the statute of fraud, granting partial summary judgment as to a CPA violation regarding the security gate, granting partial summary judgment dismissing retaliation claims, and excluding the tenants' expert witness, they fail to argue these assignments of error in their brief. Because the tenants do not support these assignments of error with argument, consideration is waived on appeal. RAP 10.3(a)(6); Bercier v. Kiga, 127 Wash.App. 809, 824, 103 P.3d 232 (2004). In addition, to the extent the tenants do not make arguments related to the assignments of error to the court's findings and conclusions, those arguments are also waived. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
[7] "Every duty under this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement." RCW 59.20.020.
[8] Because we remand, we need not address the tenants' other arguments.